Christian, J.
delivered the opinion of the court.
This is a supersedeas to a judgment of the late District court for the 7th judicial district,-reversing a judgment of the Circuit court of Smythe connty. It was an action of debt, brought upon the following written obligation:
*150 “$800. Twelve months after date, with interest from date, I bind myself, my heirs, &c., to pay Wil-Tiam Dungan eight hundred dollars, being for the purchase money of two hundred and eighty-six acres of land lying on the east fork of Staly’s creek in Smythe county, Va., and known as the Sitsford and Manies tracts, formerly belonging to ¥m. Eobin, payable in the currency of Virginia and Eorth Carolina money. Witness my han.d and seal this 14th day of September 1862.
G-. W. Henderlite, [Seal.]”
The plaintiff declared in debt, treating it as a writing obligatory for the payment of eight hundred dollars. The defendant tendered his demurrer to this declaration and craved oyer of the writing; the plaintiff joining in the demurrer. *The said Circuit court overruled the demurrer, and rendered a judgment against the defendant, for the sum of eight hundred dollars, with interest from the 13th day of September 1863 : subject to a credit of one hundred dollars paid on the 9th September 1864. Upon a writ of error to the District court, that judgment was reversed ; and that court proceeding to enter such judgmeut as the Circuit court ought to have rendered, sustained the demurrer and dismissed the suit. A writ of error and supersedeas to that judgment, brings the case before this court. The only question which the record presents is, whether the action of debt can be maintained upon such an obligation as the one before us.
The action of debt will not lie where the amount of recovery, in money, must be ascertained by evidence of value and the intervention of a jury. The action of debt only lies for money, and the plaintiff recovers the sum to numero, and not a compensation in damages; they being merely nominal. Bank notes, though they pass generally by common consent as money, and answer the purposes of money, are not money in a legal sense; *151 unless, indeed, they be made a legal tender in payment of debts.
The obligation upon which this suit is brought, pro- - mises to pay eight hundred dollars, “ payable in the currency of Virginia and North Carolina money.” Is this an obligation to pay money, or is it in substance as well as form, a stipulation to pay bank paper, at that time currently passing as a substitute for money, and which is enumerated as dollars and cents ? This is the question we have to consider.
It is argued by the learned counsel for the appellant, that this is a bond for the payment of money with a condition. They contend that the liability of the obligor under such a contract is to pay eight hundred dollars in money, but with the privilege of liquidating that amount on the day named, with Virginia and North Carolina bank notes ; and. if uot paid on the day when due, that privilege ceases, and then the obligation becomes one to pay money.
They insist that the construcion of the obligation sued upon, is to be governed by that class of cases which hold, that where the obligation is to pay money with the mere privilege to the obligor to pay in some other article on or before a certain day, then the action of debt may be brought upon such obligation. They confidently rely in support of this position upon the following cases, decided by this court: Crawford v. Daigh, 2 Va. Cases, 5,215; Lewis v. Long, 3 Munf. 136; and Butcher v. Carlyle, 12 Gratt. 520.
In Crawford v. Daigh, the note was for the payment of sixty-four dollars in good state bank paper, payable one day after date. The court was of opinion that state bank paper was not here mentioned as contra-distinguished from money, but from other paper in circulation, then • less valuable than money. Payment was to be made in a currency of equal value to money, and one day after the date of the note. The contract in that *152 case was, manifestly, to pay in money or its equivalent value in good state bank paper. See Judge Moncure’s opinion in Butcher v. Carlyle, 12 Gratt. 524.
In Lewis v. Long, 3 Munf. 136, the note was for $250, “to be paid in trade such as to be had; deer-skins, furs, flax, snake root, beef, pork, bacon,” &c. In that case the question as to the form of action was neither raised by the pleadings nor in argument, nor decided by the court. The only question raised was whether (inasmuch as the recovery was only forty-six dollars, though the amount claimed was over one hundred dollars,) the appellate court had jurisdiction ; that jurisdiction being then limited to cases where the amount in controversy was over one huudred dollars. It was evident, however, that upon such a contract the liability of the obligor was to pay money, with the privilege of paying in trade, &c., when the payment was due ; and in default of his paying in the mode stipulated, the obligee had the right to demand money ; and the action of debt would therefore lie.
In Butcher v. Carlyle, 12 Gratt. 520, a case much relied on. by the learned counsel for the appellants, the obligor bound himself to pay on or before the 25th March 1842, the sum' of $816.05, with interest, &c.; “which sum may he discharged in notes or bonds due on good solvent men residing in the county of Randolph, Virginia.” The question was raised by demurrer, the defendant craving oyer of the obligation, whether the action of debt could be maintained on such a contract. The court held, that an action of debt would lie in such a case, because the obligation was for the payment of a sum of money, with a mere privilege to the obligor to discharge it in notes or bonds of the description mentioned on or before the day on which it became payable; and having failed so to dischai’ge it, he is liable to an action of debt for the money. The promise to pay was absolute and the form of expression, “which sum may *153 be discharged, &c.,” indicates mere permission or privilege. The obligee had only a right to demand money. He had no right to demand the notes or bonds. The obligor had a right to pay either in money or in notes or bonds, provided he paid them before the day fixed for payment.
Judge Moncure delivering the opinion of the court in this case, takes pains to distinguish it from Beirne v. Dunlap, 8 Leigh, 514, (which, in my opinion, controls the case at bar,) and so far from assailing the authority of that decision, expressly approves it as the settled law-respecting such obligations. He says, p. 522: “when the obligation is to pay money in a fixed quantity of some other article, as in so many bushels of wheat, or in wheat at a certain price per bushel, or in bonds, bank 'notes or other choses in action, of a certain nominal amount, the authorities all seem to agree, that the meaning and effect of the obligation is the same as if it had been in the simple form of an obligation to deliver the article ; and that covenant is the proper remedy.” An obligation to pay a sum in bank notes, is for payment in an article of which the quantity is ascertained. This arises from the peculiar nature of the article “which is •enumerated in dollars as specie is.” Campbell v. Wister, 1 Litt. R. 30.
Beirne v. Dunlap, (supra), is a case exactly in point, and its authority is not in the least degree shaken by the cases relied upon by the learned counsel for the appellants. In that case the obligation was to pay “ the sum of $813.79, in notes of the United States Bank, or either of the “Virginia banks.” In that case it was held by the unanimous opinion of the court, that the action of debt would not lie ; but that covenant was the proper remedy. Parker, J. says, “ To pay $100 in bonds or bank paper, means bonds or notes calling for that sum which the obligors or banks are bound for. It is the same thing in law as an engagement to pay the $813.79 in 800 bushels *154 of wheat, or in any other commodity whose quantity is ascertained, as the amount of bank notes, in this case, is ascertained. And if so an action of debt will not lie, unless it would lie upon a promise to pay a fixed quantity of any commodity of fluctuating value. In this respect there is no difference between bank paper and any other commodity. Paper may rise or depreciate in value before the day of payment; and if the day passes when the contract is to be fulfilled, the measure of .the obligee's rights and the obligor’s liabilities is the value of the notes on that day, to be ascertained by the verdict of a jury and awarded in damages.”
In the case at bar, the obligation was to pay $800, “ payable in the currency of Virginia and PTorth Carolina money.” Plow whatever general rules may be adopted as means of ascertaining the intention of the parties, the end in view, in every case, is to ascertain the intention from the contract; and when so ascertained, effect will be given to it, if lawful. Is then the writing obligatory before us, an obligation for the payment of money with a condition,' or, in other words, for the payment of a sum certain, with the mere privilege to the obligor to pay in currency of a certain kind on or before a certain day ? Or is it an obligation, in substance, as well as in form, to pay bank paper, then currently passing as money, and which is enumerated in dollars and cents as specie is ?
. In seeking to ascertain the intention of the parties from the contract itself, it is not improper to consider the circumstances which surrounded them at the time it was entered into.
The writing obligatory was executed on the 14th day of September 1862, and was payable twelve months after date ; and the amount to be' secured was the purchase money of a tract of land. At that time gold and silver had been driven from the channels of circulation as currency, and Confederate States treasury notes and state *155 bank notes were the only currency in circulation. Both were depreciating, but the former much more rapidly than the latter. The obligor was not willing to pay in gold, and the obligee was not willing to accept Confederate currency in payment for his laud. They, therefore, to avoid the payment of gold on the one hand, and the receipt of Confederate money on the other, entered into the obligation before us, in which the obligor bound himself to pay, and the obligee to receive, Virginia and North Carolina bank notes. This is, I think, the true construction of the contract between the parties. It was substantially a mere contract to pay Virginia and North Carolina bank notes to a certain specified amount, expressed in words as appropriate as any other, to signify how much bank paper was to be paid ; and is equivalent to an engagement to pay bank notes amounting to 800 dollars, or so many bank notes as on their face will nominally make that sum.
But it is insisted by the learned counsel for the appellant, that the promise to pay $800 is absolute; and the form of expression, “payable in Virginia and North Carolina currency,” &c., indicates mere permission or privilege to pay in such currency. This is not a sound view. In this case the quantity of the Virginia and North Carolina currency is fixed, and the insertion of the words “eight hundred dollars” has no reference to current coin, but to an amount of bank notes which represents so much coin; the same term being always used in the enunciation of both currencies. In cases of indetermate quantity there can be no other measure of damages than the named sum, and the intervention of a jury is unnecessary. The named sum must necessarily be the amount of the debt, which is then precisely ascertained. But where the named sum is to be paid in any determinate quantity of a collateral article subject to fluctuation in its market price, the value of that article is the thing due, and as it may be more or les3 than the named *156 sum for which the creditor is willing to take the article, it must be estimated in damages by a jury. See Judge Parker’s opinion in Beirne v. Dunlap, 8 Leigh, 518.
It is also insisted that the words “payable” in this obligation, are equivalent to the words “may be discharged” in the note under consideration, in Butcher v. Carlyle, and only indicated a permission or privilege. This would be a forced construction, and would do violence to the ordinary signification of the word, when used in all contracts. Payable means to be paid, not may be paid. It imports an obligation, and not a mere privilege. A contract to pay a sum of money, by which that sum is made payable at a certain place, or on a certain day, always imports an obligation 'to pay at that place or on that day, and a failure to pay at the place or on the day stipulated is a violation of the contract. And so, a contract to pay a sum of money, which by its express terms is made payable in a certain kind of currency, imports an obligation on the part of the obligor to pay, and of the obligee to receive, that currency. Suppose the obligation was, that the obligor promised to pay on the 1st January 1863, $1,000, payable in Confederate treasury notes, could it be possibly maintained before any court that if the obligor failed to pay on that day, then the obligee mi^ht demand gold, and that the judgment should be for $1,000 in gold, when by the express stipulation of the parties, it was payable in Confederate currency ? And yet, this result inevitably follows if the view of the learned counsel be correct. I am of opinion that in this case the obligation of the defendant was to pay, and of the plaintiff was to receive, Virginia and iforth Carolina state bank notes, and the commodity being of a determinate quantity, subject to fluctuation in its market price, the value of that currency is the thing that is due, and that can only be estimated in damages by a jury. I am, therefore, of opinion that an action of debt will not lie upon such an *157 obligation, but that covenant is tbe proper remedy: and that tbe judgment of tbe District court should be affirmed.
Judgment oe the District court aeeirmed.